```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


RYAN SHEEHAN,                    *    Case No. 19-CV-4154(DLI)
                                 *
            Plaintiff,           *    Brooklyn, New York
                                 *    August 16, 2021
     v.                          *
                                 *
CONSENSYS, INC.,                 *
                                 *
            Defendant.           *
                                 *
* * * * * * * * * * * * * * * * *

            TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
                BEFORE THE HONORABLE TARYN A. MERKL
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        JORDAN A. El-HAG, ESQ.
                          El-Hag and Associates PC
                          777 Westchester Avenue, Suite 101
                          West Harrison, NY 10604

For the Defendant:        SCOTT M. COOPER, ESQ.
                          Davis Wright Tremaine, LLP
                          1251 Avenue of the Americas, 21st Fl
                          New York, NY 10020
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

Fiore Reporting and Transcription Service, Inc.
4 Research Drive, Suite 402
Shelton, Connecticut 06484 (203)929-9992

```
 1                (Proceedings commenced at 4:03 p.m.)
 2                THE CLERK:  This is civil cause for status
 3    conference, Docket 19-CV-4154, Sheehan vs. Consensys, Inc.
 4    Before the parties -- before asking the parties to state their
 5    appearance, I would like to note the following.
 6                Persons granted remote access to proceedings are
 7    reminded of the general prohibition against photographing,
 8    recording and re-broadcasting of court proceedings.  Violation
 9    of those prohibitions may result in sanctions, including
10    removal of court-issued media credentials, restricted entry to
11    future hearings, denial of entry to future hearings or any
12    other sanctions deemed necessary by the Court.
13                Will the parties please state their appearances for
14    the record, starting with the plaintiff?
15                MR. EL-HAG:  Jordan El-Hag on behalf of the
16    plaintiff.  Good afternoon, Your Honor.
17                THE COURT:  Good afternoon.
18                MR. COOPER:  Good afternoon, Your Honor  This is
19    Scott Cooper of Davis Wright Tremaine on behalf of Defendant
20    Consensys.
21                THE COURT:  Good afternoon.
22                So I think we left off in this case with, you know,
23    the hope that the parties could discuss, you know, sort of
24    where this is realistically going.  So I would like to hear
25    from you first, Mr. El-Hag, about how the plaintiff is doing
```

1   physically and if you guys have made any progress.

2              MR. EL-HAG:  The plaintiff is status quo.  So it's
3   not really good, and there's no real progress as made.

4              You know, I did make a initial settlement demand to
5   Mr. Cooper.  He has responded by indicating the only
6   settlement his client is interested in is a mutual walkaway,
7   which, you know, I can't get the client to accept or advise
8   them to accept at this point.

9              And I think what might be helpful for the Court, if
10  I would be permitted to do so, I could put a little bit more
11  information about my client's medical status in a letter to
12  the Court, but I would like to do that under seal.

13             I haven't discussed that with Mr. Cooper, but I
14  don't want to disclose some information to the defendants.  I
15  don't think that would benefit him.  And I think that might
16  give the Court a better sense of how to manage the situation.

17             THE COURT:  I'm not fully understanding your
18  suggestion.  Are you suggesting it be ex parte and under seal
19  or just under seal for attorneys' eyes only?

20             MR. EL-HAG:  Yeah.  Ex parte and under seal.

21             THE COURT:  Mr. Cooper, what are your thoughts on
22  that?

23             MR. COOPER:  Your Honor, I can think of no
24  justification for such a submission at this point or at least
25  that requested treatment of such a submission at this point.

4

1    I mean, plainly, the reason why we're on the phone today, Your
2    Honor, is to discuss the future, if there is a future, of this
3    case.
4              And defendant is, obviously, 50 percent of the
5    parties involved in the case, and we've been kind of held
6    hostage the last 18 plus months that Mr. Sheehan's been away,
7    first at rehab.  We had to shut down discovery.  And then not
8    long after he returned from the rehab-related pause of
9    discovery, we had Mr. Sheehan's latest incident.
10             So I just -- I can't fathom what the justification
11   would be for why defendants should not have access to whatever
12   it is that Mr. El-Hag thinks would benefit the Court.  I mean,
13   at this point, there's a confidentiality order in place in
14   this case.
15             And, frankly, if there's going to be any sort of
16   conversations -- or informed or educated conversation between
17   and among the parties, I don't know how that could benefit
18   from that sort of secrecy.
19             THE COURT:  Mr. El-Hag, would you like to add
20   anything as to why you think this is justified or any
21   authority that supports your suggestion?
22             MR. EL-HAG:  I don't have legal authority available
23   at this time.  I think that I would be fine if -- I would
24   leave it to, you know, the Court to determine after I
25   submitted it whether, you know, it would be appropriate for

5

1   disclosure, you know, in whatever limited capacity or full
2   capacity to Mr. Sheehan.
3           But I don't think it's beneficial to my client
4   and -- at this time.  And considering that his medical
5   status -- you know, I hope will start improving, you know,
6   again, his current situation doesn't reflect the future.  So I
7   don't know if putting information that's potentially, you
8   know, harmful to my client out there prematurely to the
9   defendants is good.
10          So if I'd have to, you know, come up with some legal
11  arguments and research it, I could do that.  I'm just trying
12  to be efficient here and save everybody some time without
13  having to unnecessarily brief something.
14          MR. COOPER:  Your Honor, I -- if I may?  You know, a
15  question that I would have at this point that I don't think
16  has been addressed, you know, without -- you know, I
17  understand and appreciate that perhaps there are some details
18  or specifics that Mr. El-Hag is hesitant to share.
19          But, you know, perhaps Mr. El-Hag could explain the
20  intended benefit or outcome of his filing this letter one way
21  or the other.  And then, you know, at least we're dealing with
22  fewer hypotheticals.
23          MR. EL-HAG:  Well, I can respect that.  So I feel
24  like the position that we're in now is I would like to request
25  that more time be granted to see how things develop with

6

1  Mr. Sheehan.  And I know that the defendants want this case to
2  be over with and, you know, don't really -- aren't really very
3  concerned with, you know, his development.  It would benefit
4  them if the case ended.
5              So, you know, we're going to reach a standstill,
6  potentially, as far as how this case is going to -- you know,
7  whether it's going to end at some point in time.
8              And I believe the Court's going to have to make that
9  determination.  And so I want to provide some more details
10 about, you know, some of the challenges my client is facing
11 right now, how it impacts the litigation, so the Court can
12 take that into consideration.
13             Because Mr. Cooper and I are just never going to
14 agree on, you know, continuously extending this proceeding.
15 And I don't think I will, at any point, be able to say to my
16 client, all right, like just, you know, throw in the towel.
17 So that's the logic behind my request.
18             THE COURT:  I mean, the plaintiff is under an
19 obligation to prosecute its case.  And at core, that's the
20 problem here, you know?
21             MR. EL-HAG:  Right.
22             THE COURT:  The Court is -- you know, if there's no
23 legal basis to dismiss, that's not going to happen.  You know,
24 the Court is not an arbiter of the facts in that way, right?
25 And so it's, you know, kind of an untenable posture to, you

1  know, prolong things indefinitely. And that's one of the
2  things that I was hopeful that you could help the plaintiff's
3  mother and/or other parties who are involved in his decision
4  making at this point to understand.
5          Because I am understanding that this is a very
6  difficult time for them, and I also understand their potential
7  reluctance to sort of, as, you know, you put it earlier, have
8  the settlement be a walkaway. I get all of that. But the
9  alternative is to sit on the court calendar indefinitely,
10 trial ready, you know? I mean, those really --
11         MR. EL-HAG: Yeah. Well --
12         THE COURT: -- seem to be the two options. And so,
13 you know, but the -- you can't complete discovery. So how --
14 you know, how do we proceed if the plaintiff cannot act?
15         And I understand you're saying there may be some
16 opportunity for him to recover. But, you know, I just don't
17 know how probable that is at this juncture.
18         So remind me. I'm looking back at the docket. It
19 looks like the medical event -- the tragedy happened last
20 July. So it's been almost a year.
21         MR. EL-HAG: Uh-huh.
22         THE COURT: Is that correct?
23         MR. EL-HAG: Yeah. That sounds about right.
24         THE COURT: Okay.
25         MR. EL-HAG: I don't have the file in front of me to

1  see it.
2          THE COURT:  Yeah.  I'm looking at the August 4,
3  2020, letter.  It indicates that two weeks ago, you were
4  notified by the girlfriend that Mr. Sheehan had gone into
5  cardiac arrest.
6          MR. EL-HAG:  Right.
7          THE COURT:  So it's like maybe like mid to late
8  July, latter --
9          MR. EL-HAG:  Right.
10         THE COURT:  -- latter third of July.  So --
11         MR. EL-HAG:  Right.
12         THE COURT:  -- you know, I tend to agree with
13 Mr. Cooper that, you know, an ex-parte submission detailing
14 the plaintiff's medical submission isn't necessarily
15 productive, because there's not that much that the Court can
16 do.  I mean, we can give some additional time for discovery,
17 but at some point, the plaintiff's going to need to make this
18 difficult decision about what is happening in this case.
19         MR. EL-HAG:  Right.  I suppose I -- and I don't know
20 this off the -- I'd have to research this as well.  Maybe
21 Mr. Cooper does.  I guess at some point, you know, they can
22 move to dismiss for failure to prosecute.  I don't know what
23 that time typically is in these circumstances.
24         You know, my client's family is going to continue to
25 ask me to try to prolong it.  I don't want to be in a position

1   to just force that down their -- you know, the -- down their
2   throat.  You know, it'd be -- but I also acknowledge, you
3   know, it can't sit on the docket forever.
4           And that's why I wanted to bring those facts to
5   light.  I mean, I don't have to do the ex parte letter.  I can
6   just make a representation at this time my client cannot
7   engage in any discovery.
8           So that being said, you know, we would ask for more
9   time to see what would happen with his health condition.  And
10  then maybe, I guess, it would be Mr. Cooper to push the issue
11  of whether it should be dismissed at this point.  And I can
12  review that.  And, you know, maybe they will just want to do a
13  walkaway.  But that's the situation my client's in right now.
14          THE COURT:  Mr. Cooper?
15          MR. COOPER:  I mean, Your Honor, I realize that
16  you're relatively new to the case and that Magistrate Judge
17  Pollak was handling things for a year plus before your
18  arrival.  But we're just hearing the same thing over and over
19  and over again since last summer.  And there's no progress.
20  We're barely even getting updates at this point.
21          We're talking about, as you just pointed out, Your
22  Honor, more than a year since the latest event.  And all we
23  can get is this periodic letters to the Court, you know, with
24  the same exact quotes.  You know, one that always stands out
25  to me is Mr. Sheehan is still "essentially blind."  I don't

1    know what essentially blind means, just as an example.  I
2    don't know if that means that his doctors expect him to regain
3    his vision.  And one way or the other, I don't know if or when
4    he will either regain his vision or learn braille or some
5    other means of being able to read or communicate in certain
6    ways.
7              All of which is to say that's just -- excuse me, one
8    example of, you know, even in the absence of Your Honor's
9    permission for Mr. El-Hag to submit ex parte letters under
10   seal, we're very much in the dark here still even 13 months
11   after the most recent event that's befallen Mr. Sheehan.  And
12   Mr. El-Hag is still unable to say -- even give an estimate as
13   to when or whether Mr. Sheehan will ever be able to prosecute
14   his claim.
15             At some point, we would urge that the Court is going
16   to have to, you know, respectfully, set some dates and set
17   some deadlines by which, you know, Mr. Sheehan can either
18   return to prosecute his claims or, if he can't -- because I
19   would echo what everyone else on the call has already said,
20   that the current situation is untenable over the long term.
21   And we're already -- if you combine the current 13-month delay
22   with the one that preceded it, we're already 18 months into a
23   standstill.
24             And the -- like I said, there's just no substantive
25   update on Mr. Sheehan's status and if or when he will ever be

1      able to return to prosecute his claim.
2                And I would represent, as unfortunate as
3      Mr. Sheehan's health condition might be, it is unfair to
4      Consensys and its witnesses -- potential witnesses, that is,
5      to just keep them on the hook indefinitely.
6                THE COURT:  I fully understand, Mr. Cooper.  And
7      that's, you know, what I just pointed out to Mr. El-Hag
8      vis-a-vis the plaintiff's burden to prosecute here.  You know,
9      I would also suggest, Mr. Cooper -- this is not legal
10     advice -- but the ball is in your court to some degree.
11               If you think that the case is, you know, ripe for
12     some sort of a motion, that is certainly, you know, something
13     that -- you know, is something that you may pursue.  It's
14     within your legal right to do so.
15               You know, I'm also in the dark, as you all are, with
16     regard to Mr. Sheehan's ability to participate other than to
17     be informed that he cannot participate in discovery or
18     meaningfully prosecute the case.  So, you know, we're sort of
19     at a loss.  And the standstill -- indefinite standstill, you
20     know, is a concern.
21               I'm inclined, you know, given that there's been --
22     can be some glimmer of hope that he might have some
23     improvement, to give, you know, the parties another 30 or 60
24     days.  But at some point, you know, Mr. Cooper, if you decide
25     that you would like to file a motion, that is certainly within

1  your rights.  I would just advise you to do so in accordance
2  with Judge Irizarry's individual rules.  She may or may not
3  refer the motion to me, depending on her schedule.  And, you
4  know, we would take it from there.
5            MR. EL-HAG:  And, Your Honor, this is Jordan El-Hag.
6  Just to address Mr. Cooper's point and everybody being in the
7  dark, I wish I could even myself get an update as to when
8  somebody -- you know, Mr. Sheehan's medical status would
9  change.  I'm sure the family would like that as well.
10           But as things are with people's health and medical
11  crisis, I don't know how much -- I don't know what kind of
12  information Mr. Cooper is looking for, you know?  The doctors,
13  they don't know.  They don't know how he's going to improve.
14  I don't think anyone can make that representation.
15           So I don't know how much more information I can get
16  at this point.  So it's not as if, you know, I'm trying to
17  hide the ball here at all.  It's just -- so that -- all I --
18  what I do know is, it would, essentially, be impossible for
19  him to litigate it at this point.
20           So, you know, I'm in a position with the family
21  where it would have -- this would have to be initiated by
22  Mr. Cooper to put an end to this suit, you know, by a motion.
23  So that's just, you know, in response to his comments about
24  some kind of substantive update.  And I don't know if there's
25  something the Court would like to see, but there's really not

1   much more I can provide.
2           THE COURT:  Mr. El-Hag, I don't think anybody's
3   implying that you're hiding the ball.  You know, I think in
4   our prior status, I was actually struck by your comment that,
5   you know, you have never found yourself in this situation
6   before, and it's sort of uncharted territory.
7           And I think you're probably not alone in that as
8   a -- as an attorney to suddenly find yourself in an uncharged
9   situation with a plaintiff who suffered a major medical
10  crisis.
11          So I'm not in any way implying that you're
12  attempting to hide the ball.  I don't think Mr. Cooper is as
13  well.  I think he's just zealously representing his client's
14  interest and suggesting that, you know, it's not fair for him
15  to be held in limbo indefinitely.  And, you know --
16          MR. EL-HAG:  Uh-huh.
17          THE COURT:  You know, and that -- that is, of
18  course, the concern, the indefiniteness --
19          MR. EL-HAG:  Right.
20          THE COURT:  -- of this situation.  So, you know,
21  what I think I'd like to do is put this down for a status
22  conference in, you know, six weeks or so, see where everybody
23  is.
24          Mr. Cooper, if in the interim you decide you would
25  like to seek relief in some other fashion, you certainly may,

1   you know, consult Judge Irizarry's rules and file whatever
2   motion you deem appropriate if given the permission to do so.
3           I do believe she requires a pre-motion conference
4   letter.  Let me just double check.  Because all the judges --
5   yes, she does.  I just wanted to make sure I was giving you
6   the right information.  So just make sure you check her rules
7   if you do decide to file anything dispositive in nature.  And,
8   you know, we'll take it from there.
9           Ms. Cahn, do we have a date in about six weeks?
10          THE CLERK:  We have October 4th at 3:30.
11          THE COURT:  Does that work for you gentlemen?
12          MR. EL-HAG:  Yes, Your Honor.
13          THE COURT:  So, Mr. El-Hag, is there anything
14  further you'd like to take up today?
15          MR. EL-HAG:  No, Your Honor.  Thank you for your
16  time.
17          THE COURT:  Mr. Cooper, anything further?
18          MR. COOPER:  I am consulting my calendar.  I can see
19  that I -- as was a concern or a hurdle the last time we spoke,
20  I actually have a deposition on that afternoon of the 4th.  We
21  could --
22          THE COURT:  You have so many depositions, sir.
23          MR. COOPER:  It's true, Your Honor.  I wish it
24  wasn't the -- and I wish it wasn't the case, but it is --
25          THE COURT:  I'm (indiscernible) --

| | |
|---|---|
| 1 | MR. COOPER: -- (indiscernible) calendar. |
| 2 | THE COURT: Do you have an alternative date, |
| 3 | Ms. Cahn? |
| 4 | THE CLERK: Let me see. We can do October 8th at 2 |
| 5 | p.m. It's a Friday. |
| 6 | THE COURT: Does that work -- |
| 7 | MR. EL-HAG: That's fine for me. |
| 8 | MR. COOPER: That should work for us. Thank you. |
| 9 | THE COURT: Okay. So hearing no objection, October |
| 10 | 8th at 2 p.m., we will set that down for a status conference. |
| 11 | And in the interim, Mr. El-Hag, I am going to |
| 12 | decline the ex parte letter. If you do decide to file |
| 13 | something under seal with the Court, you know, to both sides, |
| 14 | you may certainly make that application. |
| 15 | You know, if there is any need to file something |
| 16 | that includes sensitive medical information as to your client, |
| 17 | I certainly encourage you to make the requisite application to |
| 18 | file it under seal at a minimum, even if it's not submitted ex |
| 19 | parte, to ensure that his sensitive medical information is not |
| 20 | in the public record. |
| 21 | And other than that, I think we are adjourned. |
| 22 | Anything further from you, Mr. El-Hag? |
| 23 | MR. EL-HAG: No, Your Honor. |
| 24 | THE COURT: Mr. Cooper? |
| 25 | MR. COOPER: Nothing from me, Your Honor. Thank |

16

1  you.
2       THE COURT:  Okay.  Very good.  Have a good day,
3  gentlemen.
4       MR. EL-HAG:  You too.
5       MR. COOPER:  You too.  Be well.
6       THE COURT:  Take care.
7     (Proceedings concluded at 4:23 p.m.)
8     I, CHRISTINE FIORE, Certified Electronic Court Reporter
9  and Transcriber, certify that the foregoing is a correct
10 transcript from the official electronic sound recording of the
11 proceedings in the above-entitled matter.

*Christine Fiore*

15                                               October 5, 2021
16    Christine Fiore, CERT